# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CHRYSHON HOLLINS, | |
| Plaintiff, | |
| v. | Case No: |
| Sheriff VICTOR HILL, KENDRIX BURNS, ANTHONY WASHINGTON, TABATHA GIVENS, and JERVARIOUS HARGROVE, *in their individual capacities*, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT

Plaintiff Chryshon Hollins files this Complaint against Defendants Victor Hill, Kendrix Burns, Tabatha Givens, Anthony Washington, and Jervarious Hargrove, respectfully showing the Court the following:

## INTRODUCTION AND SUMMARY OF THE CASE

1.     This is an action for damages arising from the unconstitutional treatment of Chryshon Hollins.

2.     When Chryshon was a minor, he was detained by the Clayton County Sheriff's Office ("CCSO"). At Sheriff Victor Hill's direction, Sergeant Anthony Washington and Officer Jervarious Hargrove subjected Chryshon to a restraint

chair for a combined ten hours, without access to a restroom and with limited access to food and water. Sergeant Kendrix Burns and Sergeant Tabatha Givens were present but failed to act to prevent the deprivation of Chryshon's constitutional rights.

3.     This treatment violated Chryshon's rights under the United States and Georgia constitutions.

## PARTIES

4.     Plaintiff Chryshon Hollins is an individual residing in Fulton County, Georgia.

5.     Defendant Victor Hill is an individual who currently resides in a federal prison in Forrest City, Arkansas.

6.     Defendant Kendrix Burns is a resident of Henry County, Georgia.

7.     Defendant Anthony Washington is a resident of Newton County, Georgia.

8.     Defendant Tabatha Givens is a resident of Henry County, Georgia.

9.     Defendant Jervarious Hargrove is a resident of Clayton County, Georgia.

## JURISDICTION AND VENUE

10.     This action arises under the United States Constitution and 42 U.S.C. § 1983.

11.    This Court has subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331, 1343, and 1367.

12.    This Court has supplemental jurisdiction over Chryshon's state law claims pursuant to 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over Hill, Burns, Washington, Givens, and Hargrove because, among other reasons, they committed tortious acts or omissions in Clayton County, Georgia.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## ALLEGATIONS

### *The Clayton County Jail and the Inmate Restraint Chair Policy*

15.    The Clayton County Jail ("the jail") is a facility in Jonesboro, Georgia, that houses persons awaiting trial and persons convicted of criminal charges that are awaiting transfer to state prison.

16.    The CCSO was the law enforcement agency responsible for staffing, maintaining, and running the jail.

17.    Hill was the Clayton County Sheriff and was in charge of the CCSO and the administration of the jail at all times relevant to this action.

18.    At the times relevant to this action, Burns was employed as a sergeant at the CCSO.

19.    At the times relevant to this action, Washington was employed as a sergeant at the CCSO.

20.    At the times relevant to this action, Givens was employed as a sergeant at the CCSO.

21.    At the times relevant to this action, Hargrove was employed as a correctional officer at the CCSO.

22.    As certified law enforcement officers, Hill, Burns, Washington, Givens, and Hargrove regularly received training, including use-of-force training, that instructed that force may not be used to punish a person in CCSO's custody.

23.    The CCSO's "Inmate Restraint Chair" policy ("the Policy"), which had been approved by Hill, stated that "a restraint chair may be used by Security staff to provide safe containment of an individual exhibiting violent or uncontrollable behavior and to prevent self-injury, injury to others or property damage when other control techniques are not effective."

24.    However, the Policy emphasized that use of a restraint chair "will never be authorized as a form of punishment."

25.    Nevertheless, Hill had a practice of routinely ordering that the restraint chair be imposed to punish individuals in CCSO's custody.

26.     Hill knew that his subordinate jailers and jail staff—including Burns, Washington, Givens, and Hargrove—had a propensity to use excessive force, inflict cruel and unusual punishment, and show deliberate indifference toward the rights of detainees.

27.     Hill not only knew and was deliberately indifferent to the actions of his subordinate staff, but he also personally participated in the use of excessive force, infliction of cruel and unusual punishment, the use of summary punishment, and the demonstration of deliberate indifference toward the rights of detainees.

28.     As a result, Hill bears supervisory liability for the acts and/or omissions of his subordinates, including Burns, Washington, Givens, and Hargrove.

### *Chryshon's Arrest*

29.     Chryshon turned seventeen years old on April 15, 2020. He had never been arrested and had no prior criminal history.

30.     On the evening of April 26, 2020, Chryshon became agitated when his mother, Tiffany Hollins, asked him to clean his room. Chryshon began yelling and knocking items off tables. When Chryshon would not calm down, Tiffany called 911 for assistance.

31.     Chryshon did not know that his mother called the police, and in the meantime, he walked down the street.

32.    The 911 operator asked Tiffany if Chryshon had any weapons or if he was harming anyone. She confirmed that Chryshon did not have any weapons and that he was not harming anyone.

33.    Approximately thirty to forty-five minutes elapsed until deputies responded to the Hollins residence.

34.    When Chryshon saw the police arrive, he started to run to a neighbor's backyard. When he was in the backyard, he saw a flash and heard an officer telling him to get down.

35.    A sheriff's deputy held Chryshon at gunpoint, and Chryshon stopped and put his hands up. An officer handcuffed Chryshon and placed him in the back of a police vehicle.

36.    After Chryshon put his hands up, he did not resist arrest in any way. He did not exhibit any violent or uncontrollable behavior, and he did not present any risk of self-injury, injury to others, or property damage.

37.    Tiffany informed the deputies that she did not want to press charges. Instead, she immediately regretted her decision to call 911.

38.    Levon Allen, then a deputy sheriff with the CCSO, was one of the officers to respond to the scene. He spoke with Hill on the phone and sent Hill photos and videos of the Hollins residence, including a photograph of Chryshon handcuffed and seated in a CCSO vehicle. Allen had the following text message

exchange with Hill:

> HILL: How old is he?
>
> Allen: 17
>
> HILL: Chair

39.     The officers then transported Chryshon to the jail.

### *Chryshon's Detainment at the Clayton County Jail*

40.     Chryshon was calm and compliant for the entirety of the ride to the jail and exhibited no aggressive, obstinant, or difficult behavior. Chryshon cried quietly in the backseat of the police car because he was afraid of going to jail.

41.     Chryshon arrived at the jail around 1:15 AM on the morning of April 27, 2020. Officers did not search Chryshon and did not procees, formally book, or fingerprint him when he arrived.

42.     On April 27, 2020, Burns, Washington, and Givens served as supervisors of the intake area of the jail.

43.     At approximately 1:30 AM, Washington strapped Chryshon into a restraint chair, per Hill's orders. Chryshon was still in his normal clothes at the time, and he was still handcuffed. The Policy, however, required that detainees have their handcuffs removed prior to being strapped to the chair.

44.     Washington strapped down Chryshon's arms, shoulders, torso, hips, and legs. Washington allowed Chryshon to keep his arms in front of his body, but he strapped Chryshon into the chair so tightly that Chryshon had trouble breathing.

45.     Washington and Burns then dragged Chryshon, still strapped in the chair, to a medical unit and closed the door, leaving him alone in the room.

46.     Burns knew that Chryshon would remain in the restraint chair for at least four hours.

47.     Chryshon was not permitted to use the restroom before he was strapped in the chair. As a result, he was forced to urinate on himself while restrained.

48.     Chryshon remained in the restraint chair for four hours and fifteen minutes. When he was released from the chair, he fell to the floor.

49.     The Inmate Restraint Chair Policy requires that a detainee present a risk of suicide or exhibit aggressive or destructive behavior prior to being placed in the chair. However, Washington completed an incident report in which he stated that Chryshon was not a suicide risk and that he did not exhibit aggressive or destructive behavior.

50.     After Chryshon was released from the chair, he was formally booked and taken to a cell, where he slept for about an hour.

51.    An individual then entered Chryshon's cell and escorted him to the main office. There, Hill and several officers, including Hargrove, were standing next to a restraint chair. Givens was present as well.

52.    Hill introduced himself and told Chryshon that he would get the chair for disrespecting his mother. Hill also told Chryshon that if he ever misbehaved again, Chryshon would be strapped into the chair for sixteen hours.

53.    Hill ordered Hargrove to put Chryshon in the restraint chair.

54.    Hargrove strapped Chryshon in the chair and secured straps around his back, torso, hips, ankles, and legs. Hargrove strapped Chryshon's arms behind his body, which was more painful than leaving his arms in front. Chryshon's hands were again in handcuffs, and he could not move his shoulders or arms.

55.    Givens was present when Hargrove strapped Chryshon into the chair, and she photographed Chryshon after he had been strapped in the chair.

56.    At one point, the officers brought in another detained person who was also strapped in a restraint chair. That individual yelled and soiled himself while detained next to Chryshon.

57.    Chryshon remained in the chair for five or six hours.

58.    When Chryshon was released from the chair a second time, there were visible injuries to his wrists and ankles, including marks from the restraints.

59.     Givens completed an incident report in which she stated that Chryshon was not a suicide risk and that he did not exhibit aggressive or destructive behaior.

60.     At no point in time while he was at the jail did Chryshon resist officers or staff or otherwise act in an uncooperative manner in any way.

61.     Between the two periods, Chryshon was subjected to the restraint chair for approximately ten hours.

62.     Chryshon was not provided food or water until the third day of his detainment.

63.     Chryshon ultimately bonded out of jail sometime the morning of April 28, 2020.

### *Chryshon's Injuries*

64.     Beginning on the evening of April 26, 2020, Tiffany called a bail bondsman and representatives at the jail to inquire as to Chryshon's status. She was informed by staff at the jail that Chryshon was not yet logged in the system.

65.     Tiffany could not locate Chryshon for nearly forty-eight hours. The jail repeatedly informed her that no one by her son's name was in the system.

66.     When Chryshon finally returned home, Tiffany observed visible bruises on Chryshon's arms and legs.

67.     Chryshon experiences ongoing nightmares about his detainment at the jail. He suffers from anxiety, depression, and trauma as a result of the experience.

### Statute of Limitations

68.     O.C.G.A. § 9-3-99 tolls the statute of limitations for a tort claim "brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime until the prosecution of such crime or act has become final or otherwise terminated."

69.     On March 16, 2022, a grand jury indicted Hill on seven counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242.[1] Count Four was based on Hill's unlawful treatment of Chryshon.

70.     The indictment charges Hill with causing detained persons to be strapped to restraint chairs without any legitimate nonpunitive governmental purpose, for a period exceeding that justified by any legitime nonpunitive governmental purpose, and with the effect of causing physical pain and bodily injury to those individuals.

71.     On October 26, 2022, a jury convicted Hill on six of the seven counts, including Count Four.

---

[1]     Hill was first indicted on April 19, 2021. *See United States v. Hill*, 1:21-cr-143-ELR (N.D. Ga. Apr. 19, 2021). A first superseding indictment was filed on July 29, 2021. A second superseding indictment was filed on March 16, 2022.

72.    On March 14, 2023, Hill was sentenced to eighteen months' custody, followed by six years of supervised release and one-hundred hours of community service.

73.    Hill's criminal prosecution ended with his sentencing on March 14, 2023. Consequently, the statute of limitations for Chryshon's claims was tolled until March 14, 2023.

## COUNT I – VIOLATIONS OF 42 U.S.C. § 1983
## FOURTH AND FOURTEENTH AMENDMENTS – EXCESSIVE FORCE
### *Against All Defendants*

74.    Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

75.    At all relevant times, Hill was acting as the Sheriff of the CCSO and under color of law.

76.    At all relevant times, Burns, Washington, Givens, and Hargrove were acting under color of law and in the scope of their employment with the CCSO.

77.    At all relevant times, Hill was responsible for the supervision of all jailers under his command and maintained supervisory authority over Burns, Washington, Givens, and Hargrove.

78.    At all relevant times, Chryshon had clearly established constitutional rights under the Fourth and Fourteenth Amendments to the United States

Constitution to be free from unlawful seizure and the excessive use of force by those acting under color of law.

79.     At no point was there any justification for the seizure or the excessive use of force against Chryshon as complained of herein.

80.     Because Chryshon never resisted and was compliant for the entirety of his detention at the jail, the force used against Chryshon was objectively unreasonable.

81.     No reasonable officer under the circumstances would ever have used such force against Chryshon.

82.     By using objectively unreasonable force against Chryshon, Hill, Washington, and Hargrove deprived Chyshon of his rights under the Fourth and Fourteenth Amendments to be free from unlawful seizure and the unlawful use of excessive force.

83.     Burns and Givens were present when Hill, Washington, and Hargrove used excessive force on Chryshon and failed to take reasonable steps to protect Chryshon from this use of objectively unreasonable force. As a result of this failure to act, Burns and Givens are liable for the deprivation of Chryshon's constitutional rights under the Fourth and Fourteenth Amendments.

84.     Hill bears supervisory liability for the actions and/or inactions of Washington, Hargrove, Burns, and Givens because he personally participated in

the deprivation of Chryshon's constitutional rights and was on notice of a history of subordinate jailers using objectively unreasonable and excessive force againt individuals in Hill's custody.

85.    The deprivation of Chryshon's rights by Hill, Burns, Washington, Givens, and Hargrove was a direct and proximate result of the actions described herein.

86.    As a direct and proximate result of Hill's, Washington's, and Hargrove's actions and of Burns's and Givens's inaction, Chryshon suffered serious injury and damages including, but not limited to, physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

87.    The injuries to Chryshon are permanent and continuing.

**COUNT II – VIOLATIONS OF 42 U.S.C. § 1983**
**FOURTEENTH AMENDMENT – CRUEL AND UNUSUAL PUNISHMENT**
*Against All Defendants*

88.    Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

89.    At all relevant times, Hill was acting as the Sheriff of the CCSO and under color of law.

90.    At all relevant times, Burns, Washington, Givens, and Hargrove were acting under color of law and in the scope of their employment with the CCSO.

91.     At all relevant times, Hill maintained supervisory authority over jail staff, including Burns, Washington, Givens, and Hargrove.

92.     At all relevant times, Chryshon had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be free from cruel and unusual punishment, including the use of excessive force that amounts to punishment, by those acting under color of law.

93.     By strapping Chryshon into the restraint chair, denying him the use of a restroom and restricting his access to food and water, Hill, Washington, and Hargrove caused Chryshon to suffer a sufficiently serious deprivation of life's necessities.

94.     Hill's, Washington's, and Hargrove's conduct was cruel and unusual and caused Chryshon to suffer serious injuries.

95.     Hill, Washington, and Hargrove engaged in this conduct with the intent to punish Chryshon.

96.     At no point was there any justification for Hill's, Washington's, and Hargrove's use of force against Chryshon.

97.     No reasonable officer under the circumstances would ever have used such force against Chryshon, and there was no penological justification for such force.

98.     Burns and Givens were present when Chryshon was in the restraint chair, and they failed to take reasonable steps to protect Chryshon from suffering cruel and unusual punishment.

99.     Hill bears supervisory liability for the actions and/or inactions of Washington, Hargrove, Burns, and Givens because he personally participated in the deprivation of Chryshon's constitutional rights and was on notice of a history of subordinate jailers subjecting detained individuals to cruel and unusual punishment.

100.    As a direct and proximate result of Hill's, Washington's, and Hargrove's actions and of Burns's and Givens's inaction, Chryshon was deprived of his Fourteenth Amendment right to be free from cruel and unusual punishment.

101.    As a direct and proximate result of Hill's, Washington's, and Hargrove's actions, Chryshon suffered serious injury and damage including, but not limited to, physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

### COUNT III – VIOLATIONS OF 42 U.S.C. § 1983
### FOURTEENTH AMENDMENT – DELIBERATE INDIFFERENCE
### *Against All Defendants*

102.    Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

103.   At all relevant times, Hill was acting as the Sheriff of the CCSO and under color of law.

104.   At all relevant times, Burns, Washington, Givens, and Hargrove were acting under color of law and in the scope of their employment with the CCSO.

105.   At all relevant times, Hill maintained supervisory authority over jail staff, including Burns, Washington, Givens, and Hargrove.

106.   At all relevant times, Chryshon had a clearly established constitutional right under the Fourteenth Amendment to be free from deliberate indifference to a substantial risk of serious harm.

107.   By strapping Chryshon into a restraint chair so tightly that he had difficulty breathing and suffered bruising, Washington and Hargrove were deliberately indifferent to a known and substantial risk of serious harm to Chryshon.

108.   By failing to intervene when Washington and Hargrove strapped Chryshon to the restraint chair, Burns and Givens were deliberatively indifferent to a known and substantial risk of serious harm to Chryshon.

109.   Hill bears supervisory liability for the actions and/or inactions of Washington, Hargrove, Burns, and Givens because he personally participated in the deprivation of Chryshon's constitutional rights and was on notice of a history

of subordinate jailers exhibiting deliberate indifference to a substantial risk of serious harm to individuals in his custody.

110.   As a direct and proximate result of the actions as described herein, Chryshon was deprived of his Fourteenth Amendment right under the United States Constitution to be free from deliberate indifference to a substantial risk of serious harm.

111.   As a direct and proximate result of the actions as described herein, Chryshon suffered serious injury and damage including, but not limited to, physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

## COUNT IV – VIOLATIONS OF 42 U.S.C. § 1983
## FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS
### *Against All Defendants*

112.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

113.   At all relevant times, Hill was acting as the Sheriff of the CCSO.

114.   At all relevant times, Burns, Washington, Givens, and Hargrove were acting under color of law and in the scope of their employment with the CCSO.

115.   At all relevant times, Hill maintained supervisory authority over jail staff, including Burns, Washington, Givens, and Hargrove.

116.   At all relevant times, Chryshon had a clearly established constitutional right under the Fourteenth Amendment to be free from summary punishment prior to the adjudication of guilt and without due process of law.

117.   Hill, Washington, and Hargrove subjected Chryshon to summary punishment by strapping him to a restraint chair for over ten hours.

118.   Burns and Givens were present when Hill, Washington, and Hargrove subjected Chryshon to summary punishment and failed to take reasonable steps to protect Chryshon from this unconstitutional treatment.

119.   Because Chryshon was calm and compliant at the jail, his summary punishment and the use of force against him served no legitimate goal, had no penological justification, and met no legitimate government purpose.

120.   Hill bears supervisory liability for the actions and/or inactions of Washington, Hargrove, Burns, and Givens because he personally participated in the deprivation of Chryshon's constitutional rights and was on notice of a history of subordinate jailers subjecting detained individuals to summary punishment including, but not limited to, physical and mental abuse.

121.   As a direct and proximate result of the actions and inactions described herein, Chryshon was deprived of his Fourteenth Amendment right to be free from summary punishment without due process of law.

122.   As a direct and proximate result of Hill's, Washington's, and Hargrove's actions and of Burns's and Givens's inaction, Chryshon suffered serious injury and damage including, but not limited to: physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

### COUNT V – VIOLATIONS OF GEORGIA CONSTITUTION
#### *Against All Defendants*

123.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

124.   The above-described actions by Hill, Washington, and Hargrove also deprived Chryshon of his rights under the Georgia Constitution, including: freedom from abuse while in custody under Article I, Section I, Paragraph 17; freedom from deprivation of liberty without due process of law under Article I, Section I, Paragraph 1; and freedom from cruel and unusual punishment, under Article I, Section I, Paragraph 17.

125.   At all relevant times, Hill, Washington, Hargrove, Burns, and Givens were on notice of, and were deliberately indifferent to, the Georgia constitutional rights of Chryshon and other individuals.

126.   As a direct and proximate result of Hill's, Washington's, and Hargrove's actions and of Burns's and Givens's inaction, Chryshon suffered serious injury and damage including, but not limited to, physical injury; medical

expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

## COUNT VI – ASSAULT UNDER GEORGIA LAW
### *Against Hill, Washington, and Hargrove*

127.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

128.   Hill, Washington, and Hargrove acted intentionally and maliciously to injure Chryshon.

129.   Said acts were extreme and outrageous.

130.   Hill, Washington, and Hargrove placed Chryshon in reasonable apprehension of immediate, unlawful contact.

131.   Chryshon was impacted and personally harmed by said acts.

132.   As a direct and proximate result of Hill's, Washington's, and Hargrove's actions, Chryshon suffered serious injury and damage including, but not limited to, physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

## COUNT VII – BATTERY UNDER GEORGIA LAW
### *Against Hill, Washington, and Hargrove*

133.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

134.   Hill, Washington, and Hargrove caused unwelcome, intentional, and harmful, physical contact to occur to Chryshon of an insulting and provoking nature.

135.   Hill, Washington, and Hargrove acted intentionally and maliciously to injure Chryshon.

136.   Said acts were extreme and outrageous.

137.   Chryshon was impacted and personally harmed by said acts.

138.   As a direct and proximate result of Hill's, Washington's, and Hargrove's actions, Chryshon suffered serious injury and damage including, but not limited to, physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER GEORGIA LAW
### *Against Hill, Washington, and Hargrove*

139.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

140.   Hill, Washington, and Hargrove acted intentionally and maliciously to injure Chryshon.

141.   Their actions were extreme and outrageous.

142.   As a result of these acts, Chryshon has suffered severe emotional distress.

143.   As a direct and proximate result of Hill's, Washington's, and Hargrove's actions, Chryshon suffered serious injury and damage including, but not limited to: physical injury; medical expenses; physical, mental, and emotional pain and suffering; humiliation; embarrassment; and distress.

## COUNT IX – ATTORNEYS' FEES AND EXPENSES OF LITIGATION
### *Against All Defendants*

144.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

145.   As a result of Hill's, Burns's, Washington's, Givens's, and Hargrove's wrongful conduct, Chryshon has been forced to retain legal counsel and incur the costs and expenses of bringing this action in defense of his rights.

146.   Pursuant to 42 U.S.C. § 1988 and Georgia law, Chryshon is entitled to recover from Hill, Burns, Washington, Givens, and Hargrove his attorneys' fees and the costs and expenses of litigation.

## COUNT X – PUNITIVE DAMAGES
### *Against All Defendants*

147.   Chryshon realleges and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 73.

148.   The harm caused by Hill, Burns, Washington, Givens, and Hargrove has shown willful misconduct, malice, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences.

149.   Due to such conduct, Hill, Burns, Washington, Givens, and Hargrove are liable in punitive damages to deter such conduct in the future.

150.   As a direct and proximate result of Hill's, Burns's, Washington's, Givens's and Hargrove's wrongful conduct, Chryshon suffered injuries. Chryshon is entitled to punitive damages against Hill, Burns, Washington, Givens, and Hargrove to deter similar conduct in the future and to punish these defendants for their wrongful acts, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Chryshon prays for the following relief:

a.   a trial by jury on all such triable issues;

b.   compensatory, special, consequential, incidental, and all other damages allowed by law;

c.   punitive damages;

d.   reasonable attorney's fees, expenses, and costs of litigation under 42 U.S.C. § 1988 and other applicable law; and

e.   such other and further relief as the Court may deem just and appropriate.


[signature on following page]


24

Respectfully submitted this 20th day of December, 2023.

/s/ James W. Cobb
James W. Cobb
Georgia Bar. No. 420133
Jarred A. Klorfein
Georgia Bar No. 562965
Emily C. Snow
Georgia Bar No. 837411

**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Phone: 404.596.5600
Fax: 404.596.5604
*jcobb@caplancobb.com*
*jklorfein@caplancobb.com*
*esnow@caplancobb.com*